```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF KENTUCKY
                    CENTRAL DIVISION at LEXINGTON
```

MARK WEST,                      )
                                )
     Plaintiff,                 )
                                )    Civil Case No. 13-cv-193-JMH
v.                              )
                                )
CITY OF PARIS, KY, et al.,      )
                                )    **MEMORANDUM OPINION AND ORDER**
     Defendants.                )               **ORDER**
                                )

                                *** 

     This matter is before the Court upon the Motion for Summary Judgment [DE 24] filed by Defendants City of Paris, Kentucky, the Paris Police Department, Officer Michael Dempsey, individually and in his official capacity, and Officer Scott Toadvine, individually and in his official capacity. Plaintiff has filed a Response [DE 40], stating his objections to the Motion, and Defendants have filed a Reply in further support of their Motion [DE 41]. The Court being adequately advised, this matter is ripe for consideration.

     This case arises out of a series of events following a fight and which led to the arrest of Plaintiff West. He has sued Defendants asserting that the use of excessive force during his arrest violated his rights under the United States Constitution and Kentucky law and that he was subjected to assault and battery in violation of Kentucky law. For the

reasons which follow, his claims against these Defendants shall be dismissed.

## I. Background

On June 22, 2012, Mark King and Regina "Belle" Johnson picked up West and his fiancée, Megan Kincade, at West's residence in Paris, Kentucky. The couples went to dinner at a restaurant while Kimberly Sosby-Jones, Kincade's mother, stayed behind at West's home to watch West and Kincade's children. West, King, and Johnson consumed alcoholic beverages before leaving for dinner and at the restaurant. King and Johnson returned West and Megan to West's home sometime around 11:15 or 11:30 p.m. Kincade had a headache and went to bed. West went to the kitchen to talk to Sosby-Jones where she drew West's attention to King and Johnson yelling and fighting on the front lawn of West's home. West went outside and told them to stop but the fight continued. Eventually, West "got in between both of them." Facing away from the street, he knelt on one knee, holding King on the ground with his right hand and holding his left hand in front of Johnson, who was standing. He explains that he did not have a grasp on Johnson and that she was never on the ground.

Meanwhile, a neighbor had called 911 to report the disturbance. Officers Toadvine, Breslin, and Stephen Morris and Lieutenant Michael Dempsey from the Paris Police Department were

dispatched and responded to the scene. Lieutenant Dempsey stated,

> We were dispatched to the area of 1876 Rio Vista reference an active fight involving several subjects. While we were en route, dispatch advised a male subject had a female subject down in the street and was on top of her. Initial indication was that she only had on a bra and panties during the altercation. So that was the initial dispatch. And we were also told while we were on the way that that – the whole disorder, altercation, whatever you want to call it, had been going on 20 to 30 minutes before we ever received the first call on it.

The officers hurried to the scene with lights flashing and sirens sounding. As they approached the cul-de-sac where West lived, they turned off their sirens so as not to disturb the residents of the neighborhood further.

As they heard the sirens of the approaching police cars, Kincade – now awake and on the porch – and Sosby-Jones pleaded with West to come inside and unsuccessfully attempted to pull him off of or away from King and Johnson. West did not see the lights or hear the sirens of the approaching police cars and did not realize that police had, in fact, arrived on the scene. The officers did not identify themselves as "police" or otherwise identify themselves as they approached him where he kneeled on the ground between King and Johnson (who was, in fact, fully clothed). Dempsey and Breslin ordered West to get off of King

3

and Johnson, but West never heard those orders, although Dempsey shined his flashlight in West's eyes.

No one disputes the fact that West stayed where he was. Thus, Dempsey felt that he "had to go hands on and get [West] off of them" and, less than thirteen seconds later, Dempsey grabbed West's arms to pull him off of King and Johnson causing West to fall forward onto his belly on the ground as he resisted. Dempsey and West fell to the ground together, and West struggled with Dempsey, not realizing that Dempsey was a police officer, in an effort to get off of the ground and into a standing position. West does not recall what happened as he wrestled in Dempsey to get away from him, but others observed that West had Dempsey pinned to the ground and would not let go. During that struggle, West grabbed Dempsey, hyperextended Dempsey's fingers, and tore a patch from Dempsey's sleeve when he grabbed Dempsey's shirt.

West eventually succeeded in rising to his feet and realized that he had been struggling with a police officer. Simultaneously and without warning, Toadvine deployed his Taser, stunning West twice in what appears to be quick succession. West found himself back on the ground where he claims that three officers gratuitously hit him in the head, kicked him, and

4

struck him with objects.[1]  West cannot identify the officers who undertook these actions.  Other witnesses have testified that Toadvine was not engaged in kicking or striking West.  Only Kincade has identified Dempsey as one of the officers involved in the effort to control West once he was again on the ground after being stunned, but she could not testify that it was Dempsey who kicked or struck West during that time.  [Page ID# 497 ("I don't know if it was actually [Mark Dempsey] that was doing it. . . but it was him and two other cops [trying to get him under control].").]  Both Toadvine and Dempsey deny gratuitously hitting, kicking, or striking West at any time.

Ultimately, West was placed in handcuffs and placed upright in a seated position.[2]  One of the police officers called for an ambulance to take West to a local hospital for an evaluation of his injuries.  A variety of charges were lodged against West, and he ultimately pleaded guilty to disorderly conduct.  Later, he filed this action claiming relief under 42 U.S.C. § 1983 for the use of excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution, as well as a claim for assault and battery under Kentucky law.

---

[1] The officers deny that they did so.

[2] West denies that he was struck again after he was placed in a seated position.  He also denies that he was stunned on a second occasion, after he had fallen to the ground after the first use of the Taser, although Kincade claims that he was – although not by Dempsey or Toadvine.

## II. Standard of Review

Summary judgment is proper where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). In considering a motion for summary judgment, we must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

When the question is one of qualified immunity, however, the analysis is somewhat altered. In ruling on a motion for summary judgment based on the defense of qualified immunity, the existence of a disputed, material fact does not necessarily preclude summary judgment. Even if there is a material fact in dispute, summary judgment is appropriate if the Court finds that — viewing the facts in the light most favorable to the plaintiff — the plaintiff has failed to establish a violation of clearly established constitutional law. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996).

### III. Discussion

#### A. Paris Police Department

The Paris Police Department is a sub-unit or instrument of the City of Paris and is not *sui juris*, an entity that is capable of being sued, and is, therefore, entitled to summary judgment with respect to Plaintiff's § 1983 claims. *Sargent v. City of Toledo Police Dep't*, 150 F. App'x. 470, 476 (6th Cir. 2005) (holding that police departments are "merely sub-units of the municipalities they serve" and therefore are not proper defendants in a § 1983 action); *Jones v. Marcum*, 197 F. Supp. 2d 991, 997 (S.D. Ohio 2002) ("Police departments are not sui juris; they are merely subunits of the municipalities they serve."). Here, the City of Paris is the party susceptible to suit and named in this suit as a defendant – not the Paris Police Department. Accordingly, the claims against the Paris Police Department shall be dismissed.

#### B. Dempsey and Toadvine

##### 1. Excessive Force

As Defendants Dempsey and Toadvine request, the Court begins its inquiry with the issue of qualified immunity. Qualified immunity protects public officials from liability for civil damages if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555

7

U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Thus, the Court engages in a "two-tiered inquiry" to determine if an officer is entitled to qualified immunity. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013); *Austin v. Redford Twp. Police Dept.*, 690 F.3d 490, 496 (6th Cir. 2012) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The first step is to determine if the facts alleged make out a violation of a constitutional right. *Pearson*, 555 U.S. at 232. The second is to ask if the right at issue was "clearly established" when the event occurred such that a reasonable officer would have known that his conduct violated it. *Id*. These two steps may be addressed in any order, but both must be answered in the affirmative for the case to go to a fact finder to decide if each officer's conduct in the particular circumstances violated a plaintiff's clearly established constitutional rights. *Id.* at 236. If either one is not satisfied, qualified immunity will shield the officer from civil damages. *Id*. In this instance, the Court agrees with the Defendants that the facts alleged do not make out a violation of a constitutional right with respect to the actions of Dempsey and Toadvine for the reasons which follow. Thus, they are due qualified immunity, without consideration of the second qualified immunity factor, and the claims against them shall be dismissed.

8

The Fourth Amendment protects against "unreasonable seizures" and guarantees citizens the right to be "secure in their persons." U.S. Const. amend. IV. "Whether an officer's use of force in effecting an arrest violates the Fourth Amendment is a question of whether his actions are 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957-58 (6th Cir. 2013) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)). "The test is 'reasonableness at the moment' force is used, 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id*. (quoting *Graham*, 490 U.S. at 396). Balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake," three factors guide the Court: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. (quoting *Graham*, 490 U.S. at 396). Ultimately, however, the Court must determine "'whether the totality of the circumstances justifies a particular sort of seizure.'" *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

Looking at the first factor, the severity of the crime at issue, the officers were responding to a dispatch call which informed them that there was a fight and that it had been going on for some time. In other words, they might have reasonably concluded that some level of force was necessary to separate the combatants. The Court must consider, however, what force was used and whether the degree of force used against West was reasonable. Accordingly, in order to evaluate the reasonableness of the officer's actions, the Court turns to the remaining *Graham* factors: the officers' conduct in light of any "immediate threat" West posed to their safety and that of others and whether West was actively resisting arrest or attempting to evade arrest by flight.

In this case, it is undisputed that Dempsey and Toadvine responded to the scene of a reported, ongoing fight and encountered West on the ground making physical contact with King. West did not get up or release King when they arrived or when ordered to do so. It is irrelevant to the Court's inquiry that West was engaged in breaking up a fight between King and Johnson or that he did not heed the officers' order because he did not hear them. The Court evaluates the situation from a reasonable officer's perspective on the scene, not in hindsight because the Court must take into account "the fact that police officers are often forced to make split-second judgments—in

10

circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)). While the use of a stun gun or a Taser on a non-resistant person would be unreasonable absent some compelling justification "such as the potential escape of a dangerous criminal or the threat of immediate harm," *Kijowski v. City of Niles*, 372 F. App'x 595, 600 (2010), the single use of a stun device or Taser is not considered excessive where the undisputed facts show that an individual is actively resisting arrest and poses a risk to officer safety. *Caie v. West Bloomfield Tp.*, 485 F. App'x 92, 96 (6th Cir. 2012) (citing *Kijowski*, 372 F. App'x at 600).

On the facts before the Court, there was enough resistance to justify both Dempsey and Toadvine's use of force. Knowing that the fight had been ongoing for some time prior to their arrival and seeing West holding King on the ground, it was reasonable for Officer Dempsey at that point to step into the fray and attempt to separate West and King to put an end to their confrontation. Further, once West fell to the ground with Dempsey and began to wrestle with him, only to then rise to his feet, "there was, undisputedly enough resistance" on West's part to justify Toadvine's use of force, deploying his Taser to stun West once Toadvine had an opportunity to do so in order to put

11

an end to the altercation and the danger that West posed to Dempsey and, potentially, the other officers on the scene.[3]

Neither Dempsey's efforts to separate West from King, Dempsey's efforts to subdue West and to protect himself while on the ground, nor Toadvine's decision to stun West were gratuitous.  Rather, these actions served the purpose of gaining control over and neutralizing what a reasonable officer could perceive as a dangerous situation with an uncooperative subject. Plaintiff was not trying to flee but neither was he subdued and a reasonable officer on the scene would have perceived West as posing a continuing physical threat to at least Dempsey and perhaps the other police officers nearby, including Toadvine. Accordingly, the Court concludes that no reasonable finder of fact could conclude that Dempsey and Toadvine's use of force under these circumstances violated West's constitutional rights.

The Court reaches a slightly different conclusion – albeit with a similar result when it comes to Defendant's motion for summary judgment — when it considers whether West's right to be free from the use of excessive force was violated once he was subdued.  According to West, once he was on the ground after being stunned, he was incapacitated.  The officers deny that any of them gratuitously hit, kicked, or struck West while he

---

[3] Although there is evidence that West was, in fact, stunned twice at that time, the incident is best understood as a single use of the device — albeit twice triggered — to stun West.

was on the ground. He states, however, that he took "a pretty good beating" on the ground before officers attempted to place him in handcuffs and, again, after he was handcuffed but before he was lifted from where he lay on the ground on his stomach. [PageID ## 432 and 435.] He recalled the blows landing "[m]ainly [on his] head." [PageID## 432-33.] Sosby-Jones saw officers kicking him in the side two or three times and striking him with a baton on his face after he was handcuffed. Kincade testified that after West was handcuffed and while he was still on the ground, officers were kicking him in the ribs and midsection "to get [West] under control," that he was punched in the face once, and that, once West was placed in an upright, seated position, he was stunned again using the Taser.[4] [Page ID## 496-98.] Thus, there could be a material issue of fact as to whether West was subjected to force – and excessive force at that – after he was stunned and, eventually, handcuffed. *See Kijowski*, 372 F. App'x 595.

However, there is no evidence from West or any other witness which attributes such conduct to either Dempsey or

---

[4] Interestingly, while West and Toadvine have identified Toadvine as the officer who deployed his Taser, both Sosby-Jones and Kincade testified that Scott Toadvine was not involved in the fracas and did not use the Taser to stun West. [*See* Page ID## 396 and 496.] Kincade described the officer who deployed the Taser as "bald, had glasses, short" and testified that the officer who used the Taser was neither Dempsey or Toadvine. [Page ID# 496.] Further, Kincade testified that West was stunned with a Taser again, once he was handcuffed, West himself testified that the Taser was only employed once, before he went to the ground and was handcuffed. [PageID ## 435, 497.]

13

Toadvine, both of whom deny engaging in such actions. Under these circumstances, no reasonable finder of fact could conclude that Dempsey or Toadvine engaged in actions which could have violated West's constitutional right to be free from the use of excessive force, see *Totman v. Louisville Jefferson Cnty. Metro Gov't.*, 391 F. App'x. 454, 463-65 (6th Cir. 2010) (where the plaintiff cannot attribute particular force to the particular defendant, the defendant is entitled to summary judgment on plaintiff's excessive force claim), and they are protected by qualified immunity. They are entitled to summary judgment on West's excessive force claim as West has not raised a genuine issue of material fact regarding their use of excessive force after was stunned and fell to the ground and was, eventually, handcuffed.

Considering the evidence in the light most favorable to West, Dempsey and Toadvine are protected from Plaintiff's claims under 42 U.S.C. § 1983 by qualified immunity for the reasons set forth above, and the claims against them must be dismissed.

### 2. Assault

Plaintiff also claims that Dempsey and Toadvine subjected him to assault in violation of Kentucky law. Assault occurs when one person intentionally threatens another person with an unlawful touching, or causes that person to be in imminent fear of an unlawful touching. "Assault is a tort which merely

14

requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching." *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. Ct. App. 2001) (citing *Brewer v. Hillard*, 15 S.W.3d 1, 8 (Ky. Ct. App. 1999)). However, a police officer is privileged, under certain circumstances, to use force in effecting an arrest. This privilege has been codified as follows:

> (1)The use of physical force by a defendant upon another person is justifiable when the defendant, acting under official authority, is making or assisting in making an arrest, and he:
>
> (a) Believes that such force is necessary to effect the arrest;
>
> (b) Makes known the purpose of the arrest or believes that it is otherwise known or cannot reasonably be made known to the person to be arrested; and
>
> (c) Believes the arrest to be lawful.

KRS § 503.090. Police officers generally have a privilege to use reasonably necessary force to preserve order. *Lawson v. Burnett*, 471 S.W.2d 726, 728-29 (Ky. 1971) (officer responsible for damages only where he uses excessive force).

As the Court has determined that the force used to subdue and arrest West was both necessary and reasonable as outlined above, the Court also concludes that Dempsey and Toadvine were privileged to use that same force to subdue and effect the

15

arrest of West. In this instance, neither Dempsey or Toadvine had an opportunity to make the purpose of the arrest known to West beyond Dempsey and Breslin's cursory instruction for West to get off of King, although West apparently did not hear them, and both Toadvine and Dempsey reasonably believed the efforts to subdue West and the arrest to be lawful, all things considered. Further, with respect to the "beating" that West claims he took once he was on the ground, the Court has already determined that there is no evidence which attributes those actions to Defendants Dempsey and Toadvine. Summary judgment on this issue shall be granted.

### (b) City of Paris

In order to establish liability on the part of the City of Paris under 42 U.S.C. § 1983, Plaintiff must establish that some individual defendant deprived him of his constitutional right and that the moving force behind the deprivation was a policy or custom of the City of Paris. *See, e.g., Bozung v. Rawson*, 439 F. App'x. 513 (6th Cir. 2011). As the Court has concluded that no constitutional wrong occurred as a result of the actions attributable to Dempsey and Toadvine, there can be no claim against the City of Paris with respect arising out of their actions. Neither can the City of Paris be held responsible for any state tort where none exists. Accordingly, summary judgment is appropriate.

**IV. CONCLUSION**

For all of the reasons stated above, summary judgment is appropriate and judgment shall be entered by separate order in favor of Defendants City of Paris, Kentucky, the Paris Police Department, Officer Michael Dempsey, individually and in his official capacity, and Officer Scott Toadvine, individually and in his official capacity. The only claims remaining for trial in this matter are those against Shane Breslin and Steven Morris in their official capacities as an employee of the City of Paris and, the Court presumes, the City of Paris with respect to the actions of Shane Breslin and Steven Morris in their official capacities.

Accordingly, **IT IS ORDERED** that the Motion for Summary Judgment [DE 24] is **GRANTED**.

This the 22nd day of January, 2015.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge